152 N.J. Super. 561 (1977)
378 A.2d 256
JAMES C. KOTZIAN AND LUCILLE E. KOTZIAN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
DONALD E. BARR, JR., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 12, 1977.
Decided September 27, 1977.
*562 Before Judges CONFORD, MICHELS and PRESSLER.
Mr. Thomas F. McGuire argued the cause for appellants.
Mr. Roy D. Cummins argued the cause for respondent (Mr. C. Kennon Hendrix on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
*563 The sole question raised by this appeal is whether the trial judge erred in denying prejudgment interest on the verdict obtained by plaintiffs in this automobile negligence action. More specifically, the question is whether he mistakenly exercised his discretion in having regarded the circumstances here as presenting an "exceptional case" warranting the withholding of pretrial interest within the intendment of the 1975 amendment of R. 4:42-11(b), an amendment not heretofore construed.
The relevant factual context in which the issue arises is undisputed. Plaintiff James Kotzian was seriously injured on June 24, 1973 when his automobile was struck by that of defendant Barr, who had fallen asleep at the wheel. Barr was insured by Government Employees Insurance Company (GEICO) under a liability policy providing a maximum coverage of $15,000, a sum which, in view of the severity of the injury and the virtually incontestible negligence of Barr, was substantially less than the fair value of plaintiffs' claim. Barr himself was conceded to be judgment-proof and there were apparently no special circumstances here in respect of the relationship between the insured and the insurer which could have subjected GEICO to any liability in excess of the policy limit. Rather early in the litigation, which was commenced on January 10, 1974, GEICO offered plaintiffs the policy limit of $15,000, but without any interest thereon, in full settlement of Barr's liability. Plaintiffs refused, making the final counter proposal, rejected by GEICO, of their acceptance of the policy limit plus prejudgment interest on the fair value of the claim, calculated by them to be $100,000. GEICO ultimately applied to the trial court pursuant to R. 4:57-1 for leave to deposit the $15,000 in court. That leave was granted by an order entered on June 25, 1976, which also included, on GEICO's application, the provision that that sum represented the "full extent of the obligation of that insurer including any obligation of the insurer to pay prejudgment interest." The order further provided that all prejudgment interest, "regardless of who *564 is obligated to pay same, is tolled as of the date of the offering of said policy limits to the plaintiff in settlement of this claim." The action was then tried before a second trial judge to a jury which returned a combined verdict in plaintiffs' favor against Barr in the amount of $100,000. Plaintiffs' application for prejudgment interest was denied by the second trial judge, who regarded himself bound by the entry of the earlier order. It is from that final order of denial that plaintiffs appeal.
R. 4:42-11(b), as originally adopted in 1971, provided that in tort actions covered by the rule, "the court shall * * * include in the judgment interest at 6% per annum[1] on the amount of the award from the date of the institution of the action or from a date 6 months after the date of the tort, whichever is later." The prejudgment interest requirement was thus initially drawn in mandatory terms and was intended to have mandatory effect. See Ford v. Garvin, 127 N.J. Super. 391, 392 (App. Div. 1974), certif. den. 65 N.J. 566 (1974); Wicks v. Central R.R. Co. of N.J., 129 N.J. Super. 145, 147 (App. Div. 1974), certif. den. 66 N.J. 317 (1974). The potential inequity of the mandatory rule had nevertheless been promptly judicially perceived and acknowledged. See the dissenting opinion of Judge Conford in Busik v. Levine, 63 N.J. 351, 376 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). And see Espin v. Allergan, 127 N.J. Super. 496 (Law Div. 1973). It was in response to that perception that the rule was amended, effective April 1975, to permit suspension of prejudgment interest in "exceptional cases." Our problem then is to define what is meant by an "exceptional case" and to determine whether the circumstances here present *565 an "exceptional case" justifying the denial of any pretrial interest, both in relation to plaintiff and to his insurer.
We are satisfied that the term "exceptional case" as used by the rule derives its definitional content from the same considerations which underlay its adoption in the first instance and that prejudgment interest can consequently be withheld only where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand. As clearly stated in Busik v. Levine, supra, 63 N.J. at 358-359 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973), the purpose of an award of interest is not punitive. It is essentially compensatory and is intended to indemnify plaintiff for the loss of income he presumably would have earned had the money due him been earlier paid. Conversely, it is also compensatory and not punitive in that defendant presumably himself has had the use of the money on which he has presumptively earned, or at least has had the opportunity to earn, income which is rightfully plaintiff's. The intended effect of the interest award, therefore, is to place both parties in exactly the same position each would have been in, without loss to either, had the plaintiff's claim been promptly paid.
There is, however, an additional dimension to the purpose of the rule beyond the simple economic equation and that, of course, was the Supreme Court's expectation that the prejudgment interest requirement would induce earlier settlement of tort litigation. The reasoning expressed by Chief Justice Weintraub in Busik was that
Delay in the disposition of those cases has an impact upon other litigants who wait for their turn, and upon the taxpayers who support the system. And here there is a special inducement for delay, since generally the claims are covered by liability insurance, and when payment is delayed, the carrier receives income from a portion of the premiums on hand set aside as a reserve for pending claims. See In re Insurance Rating Board, 55 N.J. 19 (1969). Hence prejudgment interest will hopefully induce prompt defense consideration of settlement possibilities. In that meaningful way, prejudgment *566 interest bears directly upon the judicial machinery and the problems of judicial management. It is this facet, added to the consideration of justice between the litigants, which warrants our holding that prejudgment interest be payable in these matters. [63 N.J. at 359-360]
We conclude, therefore that the authorization of R. 4:42-11(b) for the judicial suspension of interest extends only to those cases where an award of interest would neither advance the aim of early settlement nor constitute fair compensation to plaintiff for money withheld and used or presumptively used by defendant.
In applying this principle to the facts here it is first immediately obvious that in terms of the desiderata of the rule the positions of Barr and GEICO are radically different.[2] Initially, it is clear that GEICO's maximum liability on its contract of insurance was the policy limit of $15,000 plus prejudgment interest on the first $15,000 of the verdict. There is no basis either as a matter of law or as a matter of its contractual undertakings for imposing upon GEICO any greater liability and, more particularly, for imposing upon it, as the plaintiffs urge, prejudgment interest on the entire $100,000 verdict. The question then, as to GEICO, is whether or not prejudgment interest on the $15,000 should have been allowed and, if so, for what period of time.
It is GEICO's position that having offered the policy limit it should be relieved of all prejudgment interest. We disagree. GEICO's contention disregards several significant considerations. First, we cannot say that plaintiffs were unreasonable *567 in refusing to settle the claim for the policy limit alone, thereby foregoing all prejudgment interest. In view of the fact that they had no hope of realizing the fair value of their virtually indefensible claim because of Barr's impecuniousness, it would be unjust to penalize them for declining to accept in full settlement anything less than the maximum amount of the carrier's post-verdict liability, which would have included prejudgment interest on the policy limit. Moreover, GEICO, until its deposit of the policy limit in court, continued, at least presumptively, to have the use of that sum, and plaintiff, of course, up until that time had neither access to it nor a right of interest on it. It is, therefore, in these circumstances not inequitable to require GEICO to pay interest on its $15,000 from the date the complaint was filed until the date it placed the money beyond its own reach by making the deposit in court. A carrier always has it within its power to stop the running of prejudgment interest by a deposit in court where it finds itself, as did GEICO here, willing to settle but unable to do so for reasons not implicating any unreasonable conduct on the part of the plaintiff.[3]
As to the $85,000 portion of the verdict for which Barr is individually liable, we fail to perceive how any of the policy considerations underlying the rule could possibly be advanced by allowing prejudgment interest thereon. Barr, who has nothing, can hardly be regarded as having withheld and, therefore, having had the use of funds to which plaintiffs were entitled. Nor, of course, was he in any position, both because of his financial circumstances and because of his contractual obligations to the carrier, to propose *568 any kind of settlement of the action. It is for that reason that we regard that portion of the verdict as an "exceptional case" within the meaning of the rule and, accordingly, concur in the trial court's denial of prejudgment interest thereon.
We are constrained to express our disapproval of a prejudgment disposition of the prejudgment interest question. We recognize that some ambiguity as to the proper time for consideration of this question may be attributable to the manner in which the rule is drawn. We are nevertheless of the view that the determination of whether or not an "exceptional case" under the rule has been presented requires an evaluation of the totality of the relevant circumstances. Such an evaluation cannot realistically be undertaken prior to the final disposition of the action.
Reversed and remanded for entry of judgment consistent with this opinion.
NOTES
[1] The amount of prejudgment interest was increased to 8% by amendment effective April 1975. Note, further, that the full 8% is applicable to all judgments rendered after the effective date of the amended rule irrespective of the rate applicable when the action was commenced. Simons v. Saaz, 147 N.J. Super. 143 (App. Div. 1977).
[2] While Barr is the only nominal defendant and respondent in this appeal, GEICO, at oral argument, stipulated its willingness to submit itself directly to the jurisdiction of the court, at least with respect to the question of interest on its policy limits. We regard that stipulation as entirely appropriate and consistent with the true interests here involved, particularly in view of the fact that GEICO did in fact act not only on Barr's behalf but directly in its own interest when it made its application to the trial court pursuant to R. 4:57-1.
[3] GEICO never having made a settlement offer which included prejudgment interest on the policy limit, we do not here pass upon the question of whether or not GEICO would have been relieved of the payment of prejudgment interest without a deposit in court had it offered, and had plaintiff refused, the policy limit plus prejudgment interest thereon.