897 A.2d 357 (2006)
385 N.J. Super. 298
AMALGAMATED TRANSIT UNION LOCAL 880, Plaintiff-Respondent,
v.
NJ TRANSIT BUS OPERATIONS, INC., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 14, 2006.
Decided May 8, 2006.
Zulima V. Farber, Attorney General, attorney for appellant (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Kathleen Roseme, Deputy Attorney General, on the brief).
Craner, Satkin, Scheer, Schwartz & Arnold, Scotch Plains, attorneys for respondent (John A. Craner, on the brief).
Before Judges SKILLMAN, AXELRAD and SABATINO.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
The issue before us is whether an employer may deduct state and federal withholding taxes from back pay arbitration awards when a union employee is reinstated. The trial judge held it may *358 not and directed payment of the gross award to the employee. We reverse.
Plaintiff Amalgamated Transit Union, Local 880 and defendant New Jersey Transit Bus Operations, Inc. (NJT) are parties to a collective bargaining agreement, which requires binding and final arbitration of grievances. NJT terminated three of its employees, Bernard Bryson, David Owens and Bobby Harrison, for improper conduct. The union filed grievances on their behalf and demanded arbitration. In all three cases, the arbitrator ruled that NJT demonstrated a basis for disciplinary action, but that termination was too harsh a sanction. The arbitration awards reduced each penalty to a suspension, reinstated the grievant to his respective job and ordered back pay from the end of the suspension period to the employee's return to work. Each employee returned to work with employment benefits and seniority rights as if his job were never terminated, and NJT erased the termination from the employees' personnel files.
The union filed suit to confirm the arbitration awards, and to direct NJT to pay the back pay the union contended was owed to each grievant. Pertinent to this appeal, the legal dispute between the parties concerned the issue of whether the payments to the reinstated employees should be gross or net of income taxes. NJT sought to withhold federal and state taxes from the back pay arbitration awards, contending the awards constituted wages under federal and state law. See 26 U.S.C.A. § 3401 (defining "wages" as "all remuneration ... for services performed by an employee for his employer...."); N.J.S.A. 54A:5-1a (Compensation for purposes of New Jersey gross income tax consists of the following categories of income: "Salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered ...."); see also Soc. Sec. Bd. v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946) (holding that a back pay award under the National Labor Relations Act to an employee who was wrongfully discharged for union activity and was reinstated was treated as wages under the Social Security Act).
NJT argued it was thus obligated to make appropriate deductions. See 26 U.S.C.A. § 3402(a)(1) (which requires every employer making payment of wages to withhold income taxes from those wages); N.J.S.A. 54A:7-1(a) (imposing a similar obligation on an employer maintaining an office or transacting business in New Jersey who pays wages subject to New Jersey personal income tax).
The union sought payment of the awards without withholding, though not denying they comprised taxable income. It relied upon the opinion in Sang-Hoon Kim v. Monmouth College, 320 N.J.Super. 157, 726 A.2d 1017 (Law Div. 1998), involving a faculty member who was terminated based on national origin, and who obtained a damage award for past lost income based on a jury determination of discrimination under the New Jersey Law Against Discrimination (LAD) but no cause of action on his contract claim. The professor, who had been fired five years prior to the award and had never been rehired, did not seek reinstatement. The judge in Kim held that the award did not constitute wages and was thus not subject to deduction of withholding taxes under the Internal Revenue Code. The court reasoned that the definition of "wages" contemplated the "performance of services by the employee," and since damages were awarded for a time period during which plaintiff was no longer working for the employer and there was no employer-employee relationship at the time of the payment, *359 he was not performing services and thus not earning wages. Id. at 160, 726 A.2d 1017. Here, NJT argued to the Law Division that Kim was distinguishable because his relationship with his employer ended five years before the jury award, while its three employees had been reinstated to their positions and continued in an employer/employee relationship.
By order of January 13, 2005, the trial judge confirmed the arbitration awards as judgments and directed "[w]ith respect to the respective amounts of back pay due each grievant, there shall be no taxes deducted from the back pay awards except as otherwise authorized by the grievant." Based on oral argument, it appears she inferentially adopted the rationale of Kim. By order of April 21, 2005, judgment was entered in favor of the union on behalf of Harrison in the amount of $16,975.34, Owens in the amount of $34,823.03, and Bryson in the amount of $15,201.89, with the individual employees to be responsible for all state, federal and local taxes. NJT's request for a stay of the judgment was denied by the trial court on June 24, 2005, and by us on August 18, 2005.
During the pendency of this appeal, a Law Division judge decided a case involving almost the identical fact pattern and legal issue that we have before us. Amalgamated Transit Union, Local 1317 v. DeCamp Bus Lines, 382 N.J.Super. 418, 889 A.2d 489 (Law Div.2005). That case also involved a suit by the union to confirm an arbitration award reinstating a suspended bus driver and awarding back pay. It likewise involved an assertion by the union, among other claims, that the bus driver's award, and that of another employee, who an arbitrator found had been deprived of an opportunity to earn more money by driving a charter run, were not "wages" and not subject to withholding taxes. In DeCamp, Judge Goldman held that back pay arbitration awards constituted wages and thus were subject to deduction for FUTA (Federal Unemployment), FICA (Social Security and Medicare), and other employment taxes and withholdings, because they were paid as a consequence of the continuing employer-employee relationship.[1] The judge distinguished Kim based on the nature of the existing employment relationship as well as the nature of the award. Id. at 422-23, 889 A.2d 489. Reasoning that employment taxes are payable only when wages are paid to an employee, he noted the absence of an employer-employee relationship in Kim. Id. at 422, 889 A.2d 489. In contrast to the former employee in Kim, however, the bus drivers were never terminated by DeCamp and remained DeCamp employees. Thus, their payments for back wages were being made within their existing employment relationship with DeCamp. Id. at 423, 889 A.2d 489. Additionally, contrary to Kim, the awards to the bus drivers were purely contractual in nature under their collective bargaining agreement; they were not awards in which lost wages were used as a basis for what are essentially tort claims such as those asserted under LAD or other anti-discrimination laws. Ibid.
In a cogent opinion, Judge Goldman began his analysis with Nierotko as the cornerstone for his conclusion that the back pay award constituted wages. DeCamp, supra, 382 N.J.Super. at 423, 889 A.2d 489. In Nierotko, the reinstated employee sought to have his back pay award treated as wages under the Social Security *360 Act in order to obtain credit towards old age benefits. 327 U.S. at 359, 66 S.Ct. at 638, 90 L.Ed. at 722. Under Section 210 of the Social Security Act, "wages" were defined as "all remuneration for employment," with employment encompassing "any service, of whatever nature, performed within the United States by an employee for his employer...." 327 U.S. at 362-63, 66 S.Ct. at 640, 90 L.Ed. at 723. The Supreme Court found the back pay for the time Nierotko was wrongfully separated from his job to be clearly "remuneration" and "wages" rather than a fine or penalty for the employer's wrongdoing. 327 U.S. at 364-65, 66 S.Ct. at 641, 90 L.Ed. at 724-25.
In reaching this conclusion, the Supreme Court focused on the employment relationship, not whether the employee actually performed a task during the period encompassed by the award. The Court expressly rejected the employer's argument that Nierotko did not perform any service for the period for which he was awarded back pay. 327 U.S. at 365-66, 66 S.Ct. at 641, 90 L.Ed. at 725. It noted that various Social Security regulations classified dismissal pay, vacation allowances and sick pay as wages, an administrative decision that considered jury compensation as wages, and an IRS regulation that also classified vacation allowances and dismissal pay as wages under the statutory definition of "remuneration... for services performed by an employee for his employer...." 327 U.S. at 366 n. 17, 66 S.Ct. at 641, 90 L.Ed. at 725. In those instances, the employees were not actually working or providing services for their employers. Ibid.
In holding that the entire employment relationship must be examined to determine whether back pay constituted wages, the Supreme Court explained:
Since Nierotko remained an employee under the definition of the Labor Act, although his employer had attempted to terminate the relationship, he had "employment" under that Act and we need further only to consider whether under the Social Security Act its definition of employment, as "any service ... performed... by an employee for his employer," covers what Nierotko did for the Ford Motor Company. The petitioner urges that Nierotko did not perform any service. It points out that Congress in considering the Social Security Act thought of benefits as related to "wages earned" for "work done." We are unable, however, to follow the Social Security Board in such a limited circumscription of the word "service." The very words "any service . . . performed. . . for his employer," with the purpose of the Social Security Act in mind, import breadth of coverage. They admonish us against holding that "service" can be only productive activity. We think that "service" as used by Congress in this definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.

[Id. at 365-66, 66 S.Ct. at 641, 90 L.Ed. at 725 (emphasis added).]
In DeCamp, Judge Goldman noted that the broad definition of "wages" under the IRC as "all remuneration for employment" remains the same today. 382 N.J.Super. at 424, 889 A.2d 489. He then discussed several recent federal cases involving a class action settlement under the Employment Retirement Income Security Act (ERISA), which relied on Nierotko and held that the payments arising out of the employment relationship were properly characterized as wages and required the withholding of FICA and other taxes. Id. at 425-26, 889 A.2d 489. He also cited and discussed numerous other federal cases from 1961 to the present, which held back pay and future pay awards in a wide variety *361 of contexts such as early retirement, discrimination and wrongful termination to be subject to employment taxes based on similar rationale. Based on his research and analysis of the IRC, Revenue Rulings and case law, the Law Division judge concluded that Nierotko, though over sixty years old, was still valid law. Id. at 430, 889 A.2d 489.
The union urges us to reject the rationale and holding in DeCamp, arguing that the court's reliance on Nierotko was unjustified as the definition of wages for federal and state withholding is not the same as it was prior to 1946 According to the union, the definition of wages for withholding purposes was "all remuneration for employment" while the current definition is "all remuneration for services performed." The union therefore submits that under the prior definition monies paid to a discharged employee for back pay are "remuneration for employment" but are not "remuneration for services performed." The union thus posits that the distinction between "wages" and "income" turns not on whether at the time the grievant receives the award he is still an employee, but on whether the compensation is for services actually performed. It further argues that the case law, including Kim, supports its position that if the compensation is not paid for actual services performed during the back pay period, but rather is in the nature of a damage award, though considered income, it is not wages for withholding purposes by statutory definition.
Contrary to the union's argument, the 1937 definition of wages for purposes of withholding is not materially different than the current definition of wages; it was a two-step process then and is now streamlined into one definition. At the time of Nierotko, wages under the Social Security Act were defined as "all remuneration for employment" and employment was defined as "any service, of whatever nature, performed within the United States by an employee for his employer." Nierotko, supra, 327 U.S. at 364, 66 S.Ct. at 639-640, 90 L.Ed. at 722-723. By reading the statutes together and incorporating the definition of "employment," wages becomes defined as "all remuneration for ... any service ... performed ... by an employee for his employer," which is identical to the current definition of wages under IRC § 3401.
We are satisfied the Nierotko analysis of back pay awards as wages remains valid and that DeCamp is consistent with prevailing federal law dealing with an employer's obligation to withhold income and employment taxes from these type of arbitration awards. Judge Goldman properly rejected the union's reliance on Kim and its argument that the classification of wages necessitated the performance of actual services. As he observed:
To the extent that Kim, in dicta, suggests that back pay covering a period when the employee performs no actual services is not considered wages and is thus not subject to employment taxes, Kim conflicts with Social Sec. Bd. v. Nierotko (citation omitted), which Kim does not mention, and is contrary to every Circuit that has considered the issue as discussed in this opinion. The California state court and the Federal District Court[2] cited by Kim are the only other reported opinions to the contrary.
[DeCamp, supra, 382 N.J.Super. at 431, 889 A.2d 489.]
*362 Thus, the test we apply is whether the employees are being paid as a consequence of the existing employer-employee relationship, not whether they actually performed services for the employer for the back pay period. Although NJT attempted to terminate the relationship, we are satisfied Bryson, Owens and Harrison remained NJT employees under the terms of the collective bargaining agreement, which required arbitration. In all cases, the arbitrators reduced the termination to a suspension, reinstated the grievants to their jobs without loss of employment benefits or seniority rights, and awarded back pay commencing after the suspension period based on each grievant's salary at the time. Additionally, this was not a discrimination recovery as in Kim, where the breach of contract claim was expressly rejected, but rather was an award to reimburse the employees for income which they did not receive for the period during which they had been improperly prevented from performing their job duties. Accordingly, the payments were made as a direct consequence of their employment, and thus constitute wages subject to federal and state[3] withholding taxes.
Reversed.
NOTES
[1] In DeCamp, supra, the court accepted counsel's agreement that other deductions such as those due the State of New Jersey would follow the same treatment as FICA and FUTA taxes and made no finding that all employment taxes are necessarily treated identically. 382 N.J.Super. at 421 n. 2, 889 A.2d 489.
[2] Lisec v. United Airlines, 10 Cal.App.4th 1500, 11 Cal.Rptr.2d 689 (6th Dist.1992) (a damage award based on breach of contract in a wrongful termination action where the individual was not reinstated); Churchill v. Star Enter., 3 F.Supp.2d 622 (E.D.Pa.1998)(a discrimination case under the Family and Medical Leave Act where the verdict did not delineate between components of plaintiff's damages).
[3] Although neither party specifically briefed the issue of state withholding, it appears the analysis would be the same. See N.J.A.C. 18:35-7.2(b) ("The withholding of tax from the employee's wages must be in accordance with the instructions and methods prescribed by the current employer instruction book (Form NJ-WT)."); State of New Jersey, Dept. of Treas. Div. of Taxation, N.J. Gross Income Tax Instruction Booklet for Employers, Payors of Pension and Annuity Income and Payors of Gambling Winnings (NJ-WT January 1, 2006) "Instructions for Withholding, Paying, and Reporting the New Jersey Gross Income Tax," ¶ 5 Compensation Subject to Withholding ("Compensation includes salaries, wages, tips, fees, commissions, bonuses, and other remuneration received for services rendered; generally, an item regarded as `wages' for Federal Income Tax withholding purposes is subject to withholding for purposes of the New Jersey Gross Income Tax.").