[No. H008551. Sixth Dist. Sept. 2, 1992.]

JAMES K. LISEC et al., Plaintiffs and Respondents, v.
UNITED AIRLINES, INC., et al., Defendants and Appellants.

**COUNSEL**

Thelen, Marrin, Johnson & Bridges, William F. Hoefs, Kenneth L. Nissly, Daniel P. Westman, David R. Sovocool and Scott L. Gardner for Defendants and Appellants.

John J. Hartford for Plaintiffs and Respondents.

**OPINION**

**PREMO, J.**—Pursuant to a judgment awarding damages for wrongful termination, appellant United Airlines, Inc. (hereafter, United), paid the amount

of the judgment minus withholdings for state and federal income and Social Security taxes. The recipients, respondents James K. Lisec and Krishan K. Jagga,[1] refused to acknowledge full satisfaction of the judgment, claiming that the damages were neither wages nor earned income and therefore were not subject to withholding. Appellants Richard J. Ferris and United appeal the trial court's denial of their motion to compel acknowledgement of full satisfaction of the judgment.

## FACTS

Lisec and Jagga, long-term management employees of United, aggrieved when United paid a $1,000 award rather than 10 percent of estimated first-year savings for their suggestion that revenues could be increased by a liberalization of discount fare policies, sued United in 1973 for breach of contract and fraud. They won a well-reported verdict of almost $2 million at jury trial, but the verdict was reversed on appeal. (*Lisec v. United Air Lines, Inc.* (1978) 85 Cal.App.3d 969 [149 Cal.Rptr. 847], hereafter, *Lisec I*.)

While *Lisec I* was pending, respondents received raises and favorable job performance evaluations, and assurances from their supervisors that the suit would not affect their careers with United. Notwithstanding, United's president, appellant Ferris, disturbed by the publicity, waited on advice of counsel until the judgment was final, then in 1979 ordered their supervisors to fire Lisec and Jagga for discrediting United.

Lisec and Jagga sued on breach of contract and tort theories. After trial in 1985, the jury awarded $302,500 to Lisec and $176,500 to Jagga for breach of contract, and $1,250,000 to each plaintiff for compensatory and punitive damages for retaliatory firing in violation of public policy, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress. Following *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373], and *Newman v. Emerson Radio Corp.* (1989) 48 Cal.3d 973 [258 Cal.Rptr. 592, 772 P.2d 1059], this court reversed the tort and punitive damages award on appeal. (*Lisec v. United Airlines* (Aug. 29, 1990) H001969 [nonpub. opn.] hereafter, *Lisec II*.)

United paid Lisec and Jagga early in 1991. Including interest on the principal amount of the judgment and minus withholdings which United contends were required by federal and state law, Lisec received $361,845.63, and Jagga was paid $222,554.97. The amounts withheld were paid to the respective taxing authorities.

---

[1]Letters in the record dated January 25, 1991, and January 28, 1991, indicate that Jagga has died. No substitution of parties by the representative of his estate has been made. (See Code Civ. Proc., § 385.)

Appellants then demanded acknowledgement of full satisfaction of judgment from respondents. (Code Civ. Proc., § 724.050.) They acknowledged partial satisfaction of judgment. (Code Civ. Proc., § 724.120.) The trial court denied appellants' motion to compel respondents to acknowledge full satisfaction of judgment, stating: "I do not think that a withholding under these circumstances is appropriate regardless of whether or not the proceeds of the judgment are taxable as income." This appeal ensued.

## CONTENTION ON APPEAL

Appellants contend here, as they did in the trial court, that the damages award constituted "wages," and that federal and state law obligated United to withhold income and other payroll taxes. Appellants reason that after *Foley* only contract damages are available in California in a wrongful termination case based on breach of contract and breach of the implied covenant of good faith and fair dealing. Since respondents' contracts were employment contracts which obligated United to pay wages and other forms of compensation in return for services, the measure of damages consists of wages and other compensation that employees would have received if their employment had not been terminated.

Respondents counter that the damages the jury awarded were not "wages" because they were not for "services performed" by either plaintiff,[2] but were for "amounts relating to services which *could have been performed in the future* and therefore earned but which were rendered incapable of being performed by the breaches of the contracts of Plaintiffs." Respondents theorize that "it appears that federal law is such that the amounts awarded to Respondents are not includable in income." However, in this proceeding they limit their discussion to the issue of withholding. "Includability, taxability, and 'withholdability' are related but nevertheless separate and distinct issues. The issue in the instant appeal has to do with 'withholdability.' "

## DISCUSSION

We must determine if appellants' characterization of the damages award as "wages" subject to withholding was correct.

"The basic object of damages is *compensation*, and in the law of contracts the theory is that the party injured by breach should receive as nearly as possible the equivalent of the benefits of performance. [Citations.]"

---

[2]Respondents also recovered accrued but unpaid vacation pay ($212.48 for Lisec and $145 for Jagga). That issue was determined by the trial court in a bifurcated proceeding and was not part of the jury award.

(1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 813, pp. 732-733.)

In the instant case, the jury was instructed that the measure of damages was, as stated in Civil Code section 3300, "the amount which will compensate the plaintiff for all of the detriment proximately caused by the breach or which in the ordinary course of things would be likely to result therefrom." The jury was specifically instructed to consider: lost salary and benefits from the date of discharge to the date of the verdict, less earnings in the same period; losses from the date of trial into the future if the plaintiffs could prove their employment would have continued, less amounts for other employment; the reasonable value of medical, hospital, and nursing care services and supplies reasonably required and actually given and the present cash value of the reasonable value of future items reasonably certain to be required and given in the future. Plaintiffs' counsel amplified that the benefits included free and reduced air fare, and dental, medical, and life insurance plans. The latter were computed at 32.6 percent of salary.

In United's view, the damages award constitutes "wages." Federal and state laws mandate that every employer making payment of wages for services performed shall deduct and withhold income and Social Security taxes. (Int.Rev. Code, § 3402(a)(1); Rev. & Tax. Code, §§ 18805, 18806; Federal Insurance Contributions Act (FICA), Int.Rev. Code, § 3101 et seq.) Under both withholding statutes, " 'wages' means all remuneration . . . for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash . . . ." (Int.Rev. Code, § 3401(a); Unemp. Ins. Code, § 13009.)

Appellants rely on *Social Security Board v. Nierotko* (1946) 327 U.S. 358 [90 L.Ed. 718, 66 S.Ct. 637, 162 A.L.R. 1445] (hereafter, *Nierotko*), for the "conceptual foundation" for payments to victorious plaintiffs of "lost compensation, *less appropriate withholdings*, where the award is based on a time period in which the plaintiff employee 'would have worked' . . . had that employee not been wrongfully prevented from performing that job." (Italics appellants'.) They reason, "if by depriving an employee of employment, idleness is therefore forced upon the employee such that they [*sic*] incur damages, . . . those are in essence damages for the period the employee would have continued to work for the employer, and ought to be treated the same as a reinstatement or backpay award."

*Nierotko* involved an employee who was reinstated with back pay by the National Labor Relations Board after the Ford Motor Company wrongfully discharged him for union activity. The Social Security Board refused to

credit his old age and survivors insurance account with the amount of the award, contending that the payment was not "wages." The Supreme Court disagreed with the Social Security Board's interpretation of the act's definition of employment ("'any service . . . performed . . . by an employee for his employer,'" (327 U.S. at p. 365 [90 L.Ed. at p. 725])) as requiring "productive activity" (327 U.S. at p. 365 [90 L.Ed. at p. 725]).

In rejecting this "limited circumscription of the word 'service'" (327 U.S. at p. 365), the court stated that notwithstanding Nierotko's employer's attempt to terminate their relationship, Nierotko remained an employee. (*Ibid.*) Since the purpose of back pay was to make the employee whole—to give him what he would have earned with the employer less any net earnings during the time of his wrongful discharge and reinstatement, "back pay" was "remuneration" not just for "services performed," but for "the entire employer-employee relationship for which compensation is paid to the employee by the employer." (*Id.* at pp. 364, 366 [90 L.Ed. at pp. 724-725], fn. omitted.) Consequently, under the Social Security Act, "back pay" constituted "wages" for which Nierotko's account should have received credit. (*Id.* at p. 370 [90 L.Ed. at p. 728].)

Following *Nierotko*, a court approved the withholding of FICA taxes from a recovery under the Back Pay Act of 1966 secured by a Federal Aviation Administration accident investigator who was reinstated after wrongful separation from government employment. (*Ainsworth* v. *United States* (Ct. Cl. 1968) 399 F.2d 176 [185 Ct. Cl. 110].)

Stressing that Ainsworth had been reinstated, the court alluded to the distinctions between reinstated and nonreinstated employees created by the forerunners of the 1966 Back Pay Act. However, the court found it unnecessary to decide "problems which may arise if an employee is not reinstated at any time." (*Ainsworth* v. *United States, supra,* 399 F.2d at p. 183.)

Appellants additionally assert that the recent case of *U.S.* v. *Burke* (1992) 504 U.S. __ [119 L.Ed.2d 34, 112 S.Ct. 1867] "is directly relevant to the issues in this case." We disagree.

In *Burke*, female employees of the Tennessee Valley Authority (hereafter, TVA) filed a title VII[3] action alleging that TVA had discriminated unlawfully in the payment of salaries on the basis of sex. TVA had increased the salaries of employees in certain male-dominated pay schedules, but not only had not increased the salaries of employees in certain female-dominated schedules,

[3]Civil Rights Act of 1964, 78 Statutes 253, as amended, 42 United States Code Annotated section 2000e et seq.

but had lowered salaries in some female-dominated schedules. (504 U.S. at p. __ [119 L.Ed.2d at p. 41, 112 S.Ct. at p. 1869].) The parties reached a settlement. TVA paid, withholding federal income taxes on the amounts allocated to claimants who had agreed to that procedure.

Burke and other employees filed claims for refund for the taxes withheld from the settlement payments. The Internal Revenue Service disallowed the claims; suit in the United States District Court followed. The trial court rejected plaintiffs' argument that the settlement payments should be excluded from their respective gross incomes under section 104(a)(2) of the Internal Revenue Code as "damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness."

The Court of Appeals reversed. It concluded that "TVA's unlawful sex discrimination constituted a personal, tort-like injury to respondents, and rejected the Government's attempt to distinguish Title VII, which authorizes no compensatory or punitive damages,[4] from other statutes thought to redress personal injuries." (*U.S.* v. *Burke, supra*, 504 U.S. at p. __ [119 L.Ed.2d at p. 41, 112 S.Ct. at pp. 1869-1870].)

On certiorari, the Supreme Court reversed. The court focussed on the inquiry whether "Title VII, the legal basis for their recovery of backpay, redresses a tort-like personal injury . . . ." The court found that it did not.

Under title VII, as it existed before its amendment in 1991, employees aggrieved by discrimination in employment on the basis of sex, race, or any of the other protected classifications, were entitled only to the remedies of back pay, injunctions, and other equitable relief. Unlike remedies available under traditional tort law and under other federal antidiscrimination statutes, nothing in title VII's remedial scheme "purports to recompense a Title VII plaintiff for any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (e.g., a ruined credit rating). [Citation.]" (504 U.S. at p. __ [119 L.Ed.2d at p. 46, 112 S.Ct. at p. 1873].)

Concluding that "Congress declined to recompense Title VII plaintiffs for anything beyond the wages properly due them" (504 U.S. at p. __ [119 L.Ed.2d at p. 47, 112 S.Ct. at p. 1874]), the court held that "the backpay

---

[4]The Civil Rights Act of 1991 amended title VII to authorize the recovery of compensatory and punitive damages in certain circumstances. Furthermore, victims of intentional discrimination are entitled to a jury trial, which was not available under the earlier statute. (*U.S.* v. *Burke, supra*, 504 U.S. at p. __ [119 L.Ed.2d at p. 41, fn. 2, p. 45, fn. 8, p. 47, fn. 12, 112 S.Ct. at pp. 1869, 1872, 1874.)

awards received by respondents in settlement of their Title VII claims are not excludable from gross income as 'damages received . . . on account of personal injuries' under [Internal Revenue Code] § 104(a)(2)." (504 U.S. at p. __ [119 L.Ed.2d at p. 47, 112 S.Ct. at p. 1874].)

We are not faced with the issue whether the damages award in this case is includable in respondents' gross income. That issue was not litigated below, and is between respondents and the Internal Revenue Service. The question before us is whether the trial court erred in declining to order respondents to compel acknowledgement of full satisfaction of the judgment. We conclude that it did not.

In reaching that conclusion, we find that the damages award was not "wages" from which United was obliged to withhold taxes.

In the instant case, United terminated the employment relationship. Unlike *Nierotko* and *Ainsworth*, where the employers were forced to reinstate the employees, and unlike *Burke*, where the employment relationship remained intact throughout, respondents' employment relationship remained terminated. Unlike *Nierotko* and *Ainsworth*, respondents did not seek back pay or a differential in pay (like *Burke*). Respondents sought compensation for legal injuries of an economic character occurring because of the wrongful *termination* of employment. None of the components of the damages award were to redress deprivation of wages earned or due for services already performed or for a differential between appropriate pay and actual pay for services performed. (Cf. *U.S.* v. *Burke, supra,* 504 U.S. __ [119 L.Ed.2d 34, 112 S.Ct. 1867].)

Consequently, the recoveries paid to respondents were not made within the context of an ongoing employment relationship. ▮ However, it is within such a relationship that federal and state statutes impose on employers the obligation to withhold taxes. These withholdings are made from wages, which are defined as remuneration for services performed by an employee for his employer. The statutes do not place upon a *former* employer the obligation to withhold taxes from an award of damages paid to a former employee not for services already performed but for breach of the employment contract. ▮ In the absence of a specific statutory mandate requiring the collection of taxes at the source of a damages award, we know of no authority allowing United to unilaterally reduce the judgment.

In the context of the narrow issue of withholdability, only, we determine that the economic damages award won by Lisec and Jagga does not constitute "wages" for "services performed," and therefore is not subject to withholding of state and federal income or Social Security taxes.

Respondents are entitled to the total amount of the judgment as entered. (Code Civ. Proc., §§ 695.210, 724.010, subd. (a).)

DISPOSITION

The judgment is affirmed.

Capaccioli, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied September 30, 1992.