# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4165

_____

| | | |
|---|---|---|
| Michael A. Mayberry;<br>Patricia J. Mayberry, | * <br> * <br> * | |
| Plaintiffs - Appellees, | * <br> * | |
| v. | * <br> * <br> * | Appeal from the United States<br>District Court for the<br>Eastern District of Missouri. |
| United States of America, | * <br> * | |
| Defendant - Appellant. | * | |

_____

Submitted: May 11, 1998
Filed: August 10, 1998

_____

Before BEAM and MURPHY, Circuit Judges, and MELLOY,[1] District Judge.

_____

MURPHY, Circuit Judge.

This case involves the proper characterization for federal tax purposes of a settlement award received by Michael A. Mayberry in a class action brought under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3). Mayberry and his wife, Patricia J. Mayberry, sued the government to obtain a refund of income and employment taxes paid on the award. They claim that the settlement was structured in such a way that the award received by

_____

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

each class member was neither income nor wages.  The government appeals from the summary judgment granted to the Mayberrys.  We reverse.

This case, and several other refund cases like it, grew out of consolidated class action suits filed by more than five thousand former employees of Continental Can Company under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3).  The class alleged that the company interfered with the attainment of members' pension rights in violation of § 510 of ERISA, 29 U.S.C. § 1140, by laying them off before those rights vested in order to reduce its projected pension liabilities.  Partial summary judgment on liability was granted in favor of the class, and a special master was appointed to assist in the settlement of damages issues or to recommend a procedure to expedite their resolution. See McLendon v. Continental Group, Inc., 660 F.Supp. 1553, 1564-65 (D.N.J. 1987); McLendon v. Continental Group, Inc., 749 F.Supp. 582, 612 (D.N.J. 1989), aff'd 908 F.2d 1171 (3d Cir. 1990).  The special master proposed a $415 million settlement fund and a way of allocating it to class members, and the settlement plan was approved by the district court in July 1992.

The plan of distribution provided that all class members would receive a basic award from the settlement fund and most would receive an earnings impairment additur as well.  Although the special master did not have the authority to determine  the ultimate tax consequences of the settlement award, he described the award as compensation for mental anguish, dignitary harm, and loss in earnings capacity.  See Report of the Special Master Regarding Various Tax Issues Attending the Settlement at 5, 10-14, 20-24 (citing United States v. Burke, 504 U.S. 229, 234-37 (1992)).  In order to avoid complicated and time consuming determination of losses suffered by each class member, the special master developed generally applicable formulas to compute each component of the award.  Since the vesting of pension rights at Continental Can depended on a combination of age and years of service, the basic award was calculated by using these two factors as a "crude proxy for . . . nonpecuniary loss suffered by class members."  The level of the award increased the

closer the individual pension rights were to vesting at the time of layoff. Id. at 25-26. The earnings impairment additur was computed by multiplying the basic award by a compensation loss ratio of "expected post-Continental Can earnings to pre-layoff earnings." Id. at 26.

Michael Mayberry, who was laid off after more than six years with Continental Can, received a settlement award of $21,467. The award included $16,145 for his basic award and $5,322 for his earnings impairment additur. The settlement agreement provided that tax would be withheld on all awards in order to protect Continental Can from any risk of withholding tax liability. Mayberry and his wife reported the award on their 1992 joint federal income tax return and then filed a claim with the Internal Revenue Service (IRS) for a refund of the income and employment taxes paid on the award, which came to a total of $5781.07 plus interest. The IRS disallowed the claim, and the Mayberrys filed this refund action.

The Mayberrys claim the award is neither taxable as income nor as wages. They say it was excludable from gross income under Internal Revenue Code (IRC) § 104(a)(2), 26 U.S.C. § 104(a)(2). That section excludes from income any "damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." They also say it did not constitute "wages" subject to Federal Insurance Contribution Act (FICA) taxes, see 26 U.S.C. §§ 3101(a), 3121(a). The parties filed cross-motions for summary judgment and stipulated that all relevant facts were undisputed. Summary judgment was granted to the Mayberrys on both tax issues.

The government appeals, arguing that the settlement award is not the type of compensatory damage excludable under IRC § 104(a)(2) because only equitable relief is available under ERISA § 502(a)(3), see Mertens v. Hewitt Associates, 508 U.S. 248, 255-63 (1993), and that it is also taxable under FICA because it fits within that statute's broad definition of "wages." The Mayberrys respond that Mertens was decided after

-3-

the class action was settled and it should therefore not be applied here. They argue that characterization of the award in the settlement agreement should be given effect and it should be considered as compensation for personal injuries.

A grant of summary judgment is reviewed de novo, see Ringier Am., Inc. V. Land O'Lakes, Inc., 106 F.3d 825, 827 (8th Cir. 1997), and is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, see Fed. R. Civ. P. 56(c). The relevant facts here are not contested, and the proper tax characterization of Mayberry's award presents only questions of law.

Two other circuit courts have previously addressed the taxability of the Continental Can settlement awards, with conflicting results. A split Fifth Circuit panel decided in favor of the taxpayers after focusing on the parties' intent at the time of the settlement and the interests in finality and predictability of taxation. See Dotson v. United States, 87 F.3d 682, 686-88 (5th Cir. 1996). In Hemelt v. United States, 122 F.3d 204 (4th Cir. 1997), the Fourth Circuit focused instead on the nature of the underlying action that had been settled and on the Supreme Court decision in Mertens. Since the underlying action was based on ERISA and since under Mertens ERISA relief is equitable in nature, the award is taxable. The class action was not based upon tort or tort type rights, a required element for a § 104(a)(2) exclusion under Commissioner v. Schleier, 515 U.S. 323, 337 (1995), and the FICA definition of wages is very broad. See Hemelt, 122 F.3d at 207-10. The parties understandably favor the circuit opinion consistent with their respective positions, but we find the reasoning of Hemelt more persuasive.

In Mertens, the Supreme Court held that compensatory and punitive damages are not recoverable under ERISA § 502(a)(3). See 508 U.S. at 255. That section allows suits to enjoin violations of ERISA and an employee pension plan or to "obtain other appropriate equitable relief" to redress such violations. 29 U.S.C. § 1132(a)(3). The

-4-

statute permits remedies traditionally viewed as "equitable," such as injunctions or restitution, but not monetary damages for a tort like injury, which are "the classic form of legal relief." Mertens, 508 U.S. at 255. To qualify for the personal injury damages exclusion under IRC § 104(a)(2), the taxpayer must show both that "the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights;' and . . . that the damages were received 'on account of personal injuries or sickness.'" Schleier, 515 U.S. at 337. The underlying cause of action is tort like if the statute authorizing it contemplates a broad range of compensatory damages for intangible harms typically associated with personal injury, such as lost wages, medical expenses, and emotional distress, as well as punitive damages.[2] See Burke, 504 U.S. at 235-37. The Mertens holding that ERISA is limited to equitable relief precludes characterization of Mayberry's settlement award as personal injury damages under IRC § 104(a)(2) since the recovery fails the first element of the test for excludability.

The Mayberrys argue that the claim against Continental Can was based on tort or tort type rights because the challenged conduct by the company caused personal injury and the funds paid under the settlement actually compensated for that injury. This argument misconstrues the first requirement in the Burke and Schleier test: the proper focus is the remedial scheme in the statute providing the cause of action and the nature of the relief available under that scheme. See Schleier, 515 U.S. at 334-35 (the primary characteristic of an action based upon tort type rights is the availability of compensatory remedies). How the class may have characterized its damages does not control. Dignity losses or mental anguish suffered by class members only "could constitute a 'personal injury' for purposes of § 104(a)(2) if the relevant cause of action evidenced a tort-like conception of injury and remedy," Burke, 504 U.S. at 239, which

---

[2]Section 104(a)(2) was amended in 1996 to exclude "emotional distress" damages from the gross income exclusion. Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1605, 110 Stat. 1755, 1838 (1996). The amendments specifically apply to damages received after the date of enactment (August 20, 1996), id. § 1605 and therefore do not affect the settlement award in this case.

ERISA § 502(a)(3) does not, see Mertens, 508 U.S. at 255.[3]  "In Mertens the Supreme Court plainly held that personal injury damages are not contemplated by section 502(a)(3) of ERISA," and "[b]y foreclosing the award of compensatory damages under [that section], the holding in Mertens also foreclosed any assertion that the [settlement award] falls within the 104(a)(2) exclusion."  Hemelt, 122 F.3d at 207-08.

The Mayberrys attempt to distinguish Burke and Schleier.  They say the law was settled in those cases as to the statutory remedies available in the underlying causes of action.  They also claim the first part of the test for excludability under § 104(a)(2) is not necessary when the character of the recovery is evident on its face.  "[S]atisfaction of Burke's 'tort or tort type' inquiry is a necessary condition for excludability under § 104(a)(2)," however, and the range of damages available under the statute creating the underlying cause of action is the "primary characteristic" of an action based upon tort type rights.  Schleier, 515 U.S. at 336, 335.  Nothing in Burke and Schleier indicates that there is an exception if the law has not been completely settled as to the scope of available remedies or that a court should look exclusively to the record the parties created in order to determine the tax character of a recovery.  Such an approach would contravene the well established requirement that any exclusion from gross income found in the tax code must be narrowly construed.  See, e.g., Schleier, 515 U.S. at 328; United States v. Wells Fargo Bank, 485 U.S. 351, 354 (1988); Hemelt, 122 F.3d at 209.

---

[3]At oral argument, counsel for the Mayberrys argued that the class of former Continental Can employees could have pursued a common law fraud claim as a tort like cause of action.  The "relevant cause of action" under Burke must be limited to the one(s) actually pursued and adjudicated, however, and the merits of an underlying cause of action will not be reviewed in characterizing a recovery for tax purposes.  See, e.g., Howard v. Commissioner, 447 F.2d 152, 157 (5th Cir. 1971); Threlkeld v. Commissioner, 87 T.C. 1294, 1297 (1986), aff'd, 848 F.2d 81 (6th Cir. 1988).

The Mayberrys also argue that Mertens should not control the characterization of their award because it was decided after the settlement was reached, the parties and special master had reasonably believed that personal injury damages were recoverable under ERISA,[4] and such damages were actually provided in the settlement. The parties' and the special master's beliefs about the nature of the cause of action do not control, however. In determining whether the ERISA cause of action was tort like in nature, the Supreme Court's interpretation of the statute is binding on this court:

> When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

Harper v. Virginia Dept. of Taxation, 509 U.S. 86, 97 (1993). The Mayberrys contend that Mertens would apply to the class action if it had been still open on direct review, but that Mertens cannot change the tax character of damages received in a case no longer pending when it was decided. The law we must apply here is the law as declared in Mertens, however. "It is [the Supreme] Court's responsibility to say what a statute means," and a "judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to

---

[4]Most of the circuits had held at the time of the settlement that such damages were not available under ERISA, see Hemelt, 122 F.3d at 209 (collecting cases from the 1st, 4th, 5th, 7th, 9th, and 11th Circuits), but the Mayberrys point to dicta in Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 145 (1990), which the special master interpreted as suggesting that ERISA remedies were not limited to equitable relief.

The Mayberrys also attempt to distinguish the Mertens holding on the ground that it applies to ERISA § 502(a) and not to § 510, which is the section the class alleged that Continental Can had violated. This argument is without merit since relief for a § 510 violation must be sought under § 502, which sets forth the statute's remedial scheme.

that construction." Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994). Retroactivity is not at issue when there has been no change in the law. See James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 534 (1991); see also Bousley v. United States, 118 S.Ct. 1604, 1610, 1612 (1998) (Stevens, J., concurring in part) (no question of retroactive application raised where Supreme Court decision merely explained what statute meant ever since it was enacted). As Chief Judge Wilkinson succinctly expressed it in Hemelt, "[w]e are simply giving effect to the Supreme Court's enunciation of what ERISA means and always has meant, notwithstanding the contrary expectations of the . . . Special Master and parties." 122 F.3d at 208.[5]

The parties also dispute whether the settlement award may properly be characterized as "wages" for purposes of FICA taxes. FICA broadly defines "wages" as "all remuneration for employment" unless specifically excepted. 26 U.S.C. § 3121(a). "Employment" in this definition means "any service, of whatever nature, performed (A) by an employee for the person employing him . . . ." 26 U.S.C. § 3121(b). These definitions are worded so as to "import breadth of coverage," Social Sec. Bd. v. Nierotko, 327 U.S. 358, 365 (1946), and they are sufficiently broad to cover the settlement award in this case.

The Mayberrys argue that since class members were compensated in full for all services rendered to Continental Can, no portion of the settlement award can be treated as "remuneration for employment" under § 3121. This argument treats "service" too narrowly as referring to "only productive activity" whereas § 3121(b) means "not only

---

[5]The Mayberrys also try to support their argument that Mertens should not control the tax character of the settlement award with cases like Howard v. Commissioner, 447 F.2d 152 (5th Cir. 1971), Metzger v. Commissioner, 88 T.C. 834 (1987) aff'd, 845 F.2d 1013 (3d Cir. 1988), and Redfield v. Insurance Co. of N. Am., 940 F.2d 542 (9th Cir. 1991). These cases were decided before Mertens and are not relevant to determining whether the underlying cause of action in this case is tort like in nature.

work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." Nierotko, 327 U.S. at 365-66. In this case the class members' employment "relationship for which compensation is paid" was factored into both components of the settlement award: the calculation of the basic award and the earnings impairment additur involved the former employees' length of service with Continental Can and their expected and pre-layoff earnings with the company. See Hemelt, 122 F.3d at 210. Moreover, the determination that the settlement award is gross income under IRC § 61(a), 26 U.S.C. § 61(a), supports the characterization of the award as wages subject to FICA taxes. See Hemelt, 122 F.3d at 210. Under these circumstances the funds distributed to Michael Mayberry under the settlement constituted "wages" within the meaning of the statutory wage tax provisions, and FICA taxes were properly withheld.

Since the settlement award received by Michael Mayberry was not excludable from gross income under 26 U.S.C. § 104(a)(2) and it was "wages" subject to FICA taxes under 26 U.S.C. § 3101, the judgment is reversed and the case is remanded for entry of judgment in favor of the United States.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-